OFFICE CLERK OF DISTRICT COURT
VALLEY COUNTY
FILED

APR 1 7 2017

SHELLEY BRYAN

FILED

OCT 0 3 2017

Clerk, U.S District Court
District Of Montana
Great Falls

Lilia N. Tyrrell
KASTING, KAUFFMAN & MERSEN P.C.
716 South 20th Avenue, Suite 101
Bozeman, Montana 59718
(406) 586-4383
(406) 587-7871 facsimile
ltyrrell@kkmlaw.net

*ATTORNEYS FOR PLAINTIFF*

## MONTANA SEVENTEENTH JUDICIAL DISTRICT COURT
## VALLEY COUNTY
*******

| | |
|---|---|
| DANNY JOE CARR, | )<br>) |
| *Plaintiff,* | ) Cause No. DV-2017-18<br>) |
| v. | ) **COMPLAINT AND JURY DEMAND**<br>) |
| SHOPKO STORES OPERATING<br>COMPANY, LLC, | )<br>) |
| *Defendant.* | ) |

1. At all times relevant to the matters alleged in this Complaint, Plaintiff, Dan Carr ("Carr"), is and was a resident of Valley County, Montana.

2. At all times relevant to the matters alleged in this Complaint, Defendant, Shopko Stores Operating Company, LLC ("Shopko"), is a Delaware limited liability company.

3. At all times relevant to the matters alleged in this Complaint, Shopko operated and continues to operate a retail clothing, toy, baby and home store located at 804 US-2 in Glasgow, Valley County, Montana.


ORIGINAL

4. Carr was employed by Pamida in 1986, and worked in a variety of roles at Pamida's retail stores.

5. In early 2012, Shopko acquired Pamida and converted over 170 Pamida stores and pharmacies to the Shopko brand.

6. On March 5, 2012, while still working for Pamida, Carr was hired as the Store Manager for Pamida's Glasgow store. Shortly thereafter, the Pamida Glasgow store was converted to a Shopko store.

7. Before his wrongful termination on April 15, 2016 Carr competently performed his responsibilities in accordance with Montana law. Carr was named Manager of the Year at least once, received the Pamida Pro Award consistently and showed satisfactory profit numbers for the Shopko. Carr was on the Pamida CEO think tank committee and was sent to corporate headquarters for meetings with the CEO.

8. During his near thirty years of work with Pamida and then Shopko, Carr had no major disciplinary issues. Only two minor warnings appear on Carr's record. Carr was once warned for signing emails with "have a blessed day" and was once warned about paying new employees slightly above the starting salary as a result of errors in an outdated human resources system.

9. After thirty years of successful service to Shopko, and its predecessor, on April 15, 2016, Shopko terminated Carr's employment. Shopko alleged Carr improperly allocated hours worked in the pharmacy department between certain employees.

10. Several previous supervisors, including district managers, approved the allocation procedure or told Carr the allocation procedure he used was allowed, because there was no other direct way to allocate hours between salary and non salaried employees and

charge the time of salaried employees to the pharmacy. A previous supervisor, in fact, told Carr to continue the practice.

11. The Glasgow store, as well as several other Shopko stores, uses this practice of allocating hours work by salaried employees as a method to track total hours worked in a certain department or store.

12. Shopko knew this allocation practice was used for years. Carr was never informed that this allocation practice was in violation of any policy or not permitted.

13. The allocation was an administrative procedure that did not result in any employee being paid more than the hours they worked.

14. Shopko provided no warnings to Carr prior to termination that this practice was not permitted. In fact, several prior district managers were aware of and approved this practice of allocating hours.

15. On the morning of April 13, 2016, Carr called Chuck Jenssen, Shopko's HR Manager, to request Family Medical Leave Act of 1993 ("FMLA") to care for his terminally ill father.

16. Carr's supervisors were aware that Carr moved his terminally ill father to Glasgow the previous week to allow Carr to care for him.

17. On April 13, 2016, just hours after Carr requested FMLA leave, his supervisor, Jason Brandow called a meeting with Carr (in person) and Janssen, (on the phone) to discuss matters related to Carr's job performance. Brandow and Janssen alleged there was an issue with potential HIPPA violations related to staff handling of pharmacy sales. This was the first time Carr had heard of or been notified of concerns related to HIPPA violations.

18. Brandow confirmed at this meeting that the alleged issues with Carr's performance related to the HIPPA questions and not allocation of hours in the pharmacy. Carr explained the pharmacy sales procedures to the satisfaction of both Brandow and Janssen.

19. At this time, Carr left work on FMLA leave to care for his ailing father.

20. On April 15, 2016, Carr received a call from Brandow and a text from Jansseen requesting a meeting with Carr. Carr met Brandow at the Shopko store, where Brandow notified Carr he was terminated for an allocation of hours issue in the pharmacy. Prior to the April 13, 2016 meeting, Carr was never notified there was anything improper about the allocation of hours in the pharmacy.

21. At all times material hereto, Shopko's agents and employees were acting within the scope of their employment and with the knowledge and consent of Defendant.

## COUNT I
## WRONGFUL DISCHARGE

22. Carr realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 21.

23. On April 15, 2016 Shopko wrongfully terminated Carr in violation of Mont. Code Ann. § 39-2-904(1) (b), because there was no good cause for the termination and Carr had completed his probationary period of employment.

24. In addition, on April 15, 2016 Shopko wrongfully terminated Carr in violation of Mont. Code Ann. § 39-2-904(1) (b), because the discharge violated the express provisions of Shopko's written personnel policies.

25. Carr believes the true reason he was terminated with in retaliation for requesting Family Medical Leave Act time and/or as part of Shopko's efforts to remove the Pamida senior level management.

26. As a result of the wrongful termination, Carr has suffered a loss of wages, employment benefits, and other compensation and is entitled to an award to compensate him for those losses.

27. Shopko engaged in actual fraud or actual malice in terminating Carr on April 15, 2016 entitling Carr to punitive damages.

## COUNT II
## VIOLATION OF FMLA

28. Carr realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 27.

29. Carr is informed and believes, and on that basis alleges, that Shopko qualifies as an "employer" as that term is defined in the FMLA, 29 U.S.C. § 2611(4), and that Carr is an "eligible employee" as that term is defined in the FMLA, 29 U.S.C. § 2611(2)

30. Shopko retaliated against Carr for exercising his rights under the Family and Medical Leave Act of 1993 when they terminated him two days after he requested leave to care for his ailing father.

31. Defendant's acts and omission are in violation of the anti-interference and anti-discrimination provisions of §105(a) of the Family and Medical Leave Act of 1993 [29 U.S.C. §2615(a)] and anti-retaliation and anti-discrimination regulations [29 C.F.R. §825.220]. Defendant acted in willful violation of Plaintiff's rights.

32. As a direct and proximate result of Shopko's unlawful acts, Carr has suffered a loss of wages, employment benefits, and other compensation and is entitled to an award to compensate him for those losses.

33. Pursuant to the Family and Medical Leave Act, Carr is also entitled to an award of prejudgment interest at the prevailing rate from April 15, 2016 to the date of judgment on

the award of wages, employment benefits, and other compensation lost to him as a result of Defendant's violations of the Family and Medical Leave Act.

34. Plaintiff is entitled to liquidated damages doubling the award of interest, wages, lost employment benefits, and other compensation lost to him as a result of Defendant's violations of the Family and Medical Leave Act as Defendant did not act in good faith and based upon reasonable grounds to believe that it was in compliance with the Family Medical Leave Act.

35. As a further direct and proximate result of Defendant's violations Plaintiff has been required to obtain the services of an attorney and he is entitled to an award of reasonable attorney's fees and the costs and expenses of this action.

WHEREFORE, Plaintiff, Daniel Carr prays as follows:

1. For an award of lost wages and fringe benefits for a period of four (4) years from April 15, 2016, together with interest thereon, in accordance with Mont. Code Ann. § 39-2-905(1);

2. For an award of damages allowed under the Family Medical including lost wages, lost employment benefits, interest, and liquidated damages.

3. For an award of punitive damages in an amount to be determined by the jury;

4. For reasonable attorney's fees, costs and disbursements incurred herein;

5. For such other and further relief as the Court may deem just.

RESPECTFULLY SUBMITTED this 14th of April, 2017.

_____
Lilia N. Tyrrell
Kasting, Kauffman & Mersen
716 S. 20th Avenue
Bozeman, MT 59718

## REQUEST FOR JURY TRIAL

Plaintiff respectfully requests that all issues be tried to a jury as provided by law.

DATED this 14th day of April, 2017.

_____
Lilia N. Tyrrell
Kasting, Kauffman & Mersen
716 S. 20th Avenue
Bozeman, MT 59718